IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN MERRELL and BOB WILLIAMS, | )<br>) |
| Plaintiffs/Counterclaim<br>Defendants, | )<br>)<br>) |
| vs. | ) Case No. 05-0735-CV-W-ODS<br>) |
| CONSUMER PORTFOLIO SERVICES,<br>INC., | )<br>)<br>) |
| Defendant/Third Party Plaintiff/<br>Counterclaimant | )<br>)<br>) |
| vs. | )<br>) |
| CROWN RECOVERY SERVICES, LLC, | )<br>) |
| Third Party Defendant. | ) |

<u>ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DIRECTING DEFENDANT TO SHOW CAUSE WHY ITS COUNTERCLAIM
SHOULD NOT BE DISMISSED</u>

I.  BACKGROUND

In December 2001, Plaintiffs entered into a Retail Installment Agreement and Promissory Note (the "Agreement") with Mid-American Auto Exchange. Pursuant to the Agreement, Mid-American Auto Exchange obtained a purchase money security interest in a 1997 Jeep Grand Cherokee purchased by Plaintiffs. Through a series of assignments, the Agreement was eventually assigned to Consumer Portfolio Services, Inc. ("CPS").

The Agreement required Plaintiffs[1] to make monthly payments of $426.80. At some point in 2002 (exactly when is neither clear in the record nor important to this discussion), Plaintiffs missed one or more payments. According to CPS' records

---

[1]Although the plural form of the word will be used, occasionally the term "Plaintiffs" refers to actions taken by one of them.

(particularly Exhibit A(4)), CPS began efforts to contact Plaintiffs in late June 2002. In mid-July, Plaintiffs advised CPS of their intent to refinance their home and pay off the car loan with the proceeds. Later, it was determined there would be insufficient proceeds from the refinancing to pay off the car loan, so Plaintiffs indicated they would pay off a portion of the loan and refinance or make payments on the balance.

On or around August 5, 2002, CPS received $8,000 from Plaintiffs, which apparently represented the proceeds of the refinancing. The payment was initially applied to future payments and a Billing Notice was issued indicating Plaintiffs' next payment was due in November 2003. Later, Plaintiffs were advised this was a mistake; the $8,000 was then applied to principal and Plaintiffs were told their next payment would be due in December 2002. It is neither clear nor important whether any portion of the $8,000 was applied to the arrearage[2] because either way the Agreement required payments to resume and Plaintiffs did not make any payments between December 2002 and April 2003.

On March 3, 2003, CPS sent an "assignment order" to Crown Recovery Services, LLC ("Crown"), directing Crown to repossess the Jeep without making contact with Plaintiffs. Crown repossessed the vehicle on or about March 5, 2003. The person who actually repossessed the vehicle (William King) initiated an encounter with Plaintiffs. The nature, circumstances and details of that encounter are in dispute.

Plaintiffs filed suit against CPS; the Amended Complaint asserts claims for (1) Breach of the Peace, (2) Trespass, (3) Wrongful Repossession, (4) Conversion, and (5) Prima Facie Tort. CPS filed a counterclaim, asserting the original Petition filed in state court defamed CPS by asserting a claim for Assault and Battery. CPS has also filed a Third-Party Complaint against Crown. Plaintiffs have not sued Crown. Pending is CPS' Motion for Summary Judgment, which focuses on Plaintiffs' claims and does not address its counterclaim.

---

[2]It appears this was not done initially, but was done later (in early November 2002) following a telephone call from Plaintiffs.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

For ease of discussion, Counts III and IV will be addressed first.

### A. Counts III and IV

CPS contends Plaintiffs' failure to make payments between December 2002 and April 2003 constituted a default giving it the right to repossess the Jeep; Plaintiffs contend a novation occurred, replacing the Agreement with a new contract that deferred their next payment to November 2003. The undisputed facts demonstrate CPS is correct and Plaintiffs are incorrect.

> Under Missouri law, a novation is the substitution of a new contract or obligation for an old one that is thereby extinguished. The four elements necessary for finding a novation are: (1) a previous valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of an old contract; and (4) validity of a new contract. In

3

addition to these requirements, there must be evidence that the parties
intended to enter into a novation. The burden of proof is on the party
asserting the novation.

State ex rel. Premier Marketing, Inc. v. Kramer, 2 S.W.3d 118, 122 (Mo. Ct. App. 1999) (internal citations omitted). The fourth requirement is particularly important, because the "new" or "replacement" contract must be valid (otherwise, the "old" or "original" contract is not replaced), and is subject to the same legal requirements as any other contract. American Nat'l Ins. Co. v. Noble Communications Co., 936 S.W.2d 124, 131 (Mo. Ct. App. 1996). Thus, for instance, if the new contract violates the statute of frauds, a novation has not taken place. Stanfield v. Grove, 924 S.W.2d 611, 613 (Mo. Ct. App. 1996).

      The Record conclusively establishes a novation did not take place because there is no evidence the parties intended to extinguish the Agreement. Plaintiffs point to CPS' original treatment of the $8,000 and the Billing Notice indicating the next payment was due more than a year hence, but a jury could not conclude these pieces of evidence demonstrate CPS intended to extinguish its rights and protections afforded under the Agreement. There are no oral or written statements reflecting CPS' intent to do so, and the documents Plaintiffs referred to are ambiguous and require speculation as to CPS' intent. In addition, the Agreement granted CPS a security interest in the vehicle purchased with the loan proceeds; nothing was done to either surrender or preserve this security interest. Absent some indication of CPS' intention in either direction, a jury could not conclude CPS was terminating the original contract.

      More importantly, perhaps, is the absence of a valid "new" contract. To accept Plaintiffs' position would require accepting their obligation to repay the loan was postponed for more than a year. As this obligation could not be completed within one year, it would have to be in writing, Mo. Rev. Stat. § 432.010[3] – and there is no writing that satisfies the statute of frauds. There is also no writing preserving or "recreating"

---

[3]Even if the new contract allowed for prepayment (like the Agreement did), the new contract clearly contemplated performance in more than a year and therefore had to be in writing. E.g., Urologic Surgeons, Inc. v. Bullock, 117 S.W.3d 722, 728 (Mo. Ct. App. 2003).

4

CPS' security interest in the vehicle. In short, there is no valid "replacement" agreement, so there could not have been a novation.

In the absence of a novation, the record establishes Plaintiffs were in default for failing to make monthly payments from December 2002 forward. The Agreement granted CPS the right to repossess the vehicle if Plaintiffs were in default. Therefore, Plaintiffs cannot prevail on their claims of Wrongful Repossession or Conversion. Summary Judgment is granted to Defendant on Counts II and III.

### B. Counts I and II

Counts I and II address the manner in which the repossession was conducted. The parties agree Crown was CPS' independent contractor; the issue to be decided is the extent to which a principal is responsible for the actions of an independent contractor.[4] Generally speaking, a principal is not legally responsible for the torts committed by an independent contractor. E.g., Carter v. Wright, 949 S.W.2d 157, 159 n.2 (Mo. Ct. App. 1997). There are exceptions, however, and the issue before the Court is whether the Missouri Supreme Court would recognize an exception in these circumstances. There being no decision from the Missouri Supreme Court, the Court is left to examine the "persuasive authority" contained in decisions of Missouri's intermediate courts. E.g., Minnesota Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006).

Count II is premised on Missouri's codification of section 9-503 of the Uniform Commercial Code ("UCC"), which states that a secured party may repossess collateral upon the debtor's default "without judicial process if this can be done without breach of the peace . . . ." Plaintiffs contend the secured party's obligation cannot be avoided by claiming the fault lies with an independent contractor retained to repossess the collateral. The Missouri Court of Appeals addressed this question in 1996. The court noted the "paucity" of Missouri law on the subject, then looked to other jurisdictions' construction of

---

[4] Plaintiffs contend CPS waived this "defense" by failing to identify it in its Answer; however, assuming this is a "defense" and not simply an argument that defeats the existence of a duty or liability, nothing in the Federal Rules of Civil Procedure require it to be alleged as such in the Answer. See Rule 8(c).

5

their versions of the UCC provision.  The court then joined the four other states to address the issue in holding "that § 9-503 of the UCC imposed a nondelegable duty on a secured creditor to repossess peaceably."  Robinson v. Citicorp Nat'l Servs, Inc., 921 S.W.2d 52, 54 (Mo. Ct. App. 1996).  Even though the secured party hired an independent contractor to repossess the collateral, the secured party could be held liable for the breach of the peace caused by the independent contractor.  Id. at 55.  The Court believes that, if faced with this question, the Missouri Supreme Court would follow Robinson's reasoning and follow the lead of the other states to address this question.

Defendant contends there is a conflict in the Missouri Court of Appeals, created by the earlier decision in Scott v. Ford Motor Credit Corp..  As the Robinson court pointed out, id., Scott did not address the same question.  Examining Scott reveals the only claims asserted against the secured party were claims for "trespass, wrongful taking, and conversion."  706 S.W.2d 453, 453 (Mo. Ct. App. 1986).  The court ultimately concluded the company engaged to repossess the vehicle was an independent contractor, so the secured party was not responsible for any torts that may have been committed during the repossession.  Id. at 461.  Scott did not involve a claim for breaching the peace, so it does not conflict with Robinson.

However, Scott is relevant to Count II, which asserts a claim for trespass.  Scott clearly establishes the principal is not legally responsible for the common-law torts committed by the independent contractor/repossessor.[5]  Therefore, CPS is entitled to judgment on Count II.

Finally, CPS contends the undisputed facts demonstrate a breach of the peace did not occur.  The Court has reviewed the Record and concludes there are disputed issues of material fact that preclude entry of judgment as a matter of law.  Therefore, summary judgment cannot be granted on Count I.

---

[5]Scott does not govern Count IV, even though it asserts a claim for conversion.  Plaintiffs contend CPS interfered with their right to possess the vehicle; obviously, CPS intended to and did interfere with Plaintiffs' right to possess the Jeep, and could be held liable if that interference were not justified by Plaintiffs' failure to make payments.  The plaintiff in Scott alleged the items converted were the personal possessions in the vehicle and the chain and padlock securing the gate behind which the vehicle was parked – a different matter entirely.

### C. Count V

"The essential elements of a prima facie tort are: an intentional lawful act by the defendant; defendant's intent to cause injury to the plaintiff; injury to the plaintiff; and an absence of any justification or an insufficient justification for the defendant's act." <u>Hertz Corp. v. Raks Hospitality, Inc.</u>, 196 S.W.3d 536, 549 (Mo. Ct. App. 2006). Missouri courts are hesitant to allow the cause of action, and the claim is not viable if a recognized tort "is otherwise available" or if the plaintiff is attempting "to avoid an inability to prove one element of a nominate tort that is otherwise applicable under the facts." <u>Id</u>.

Plaintiffs allege CPS committed a prima facie tort when Crown persisted with the repossession after the peace was breached. Plaintiffs' claim for breach of the peace under Count I applies to this situation, so a prima facie tort cannot exist. To the extent Plaintiffs seek recovery for physical injuries, the Court observes they *may* be available under Count I; this issue was not addressed in the Court's October 27, 2005 Order, which held emotional damages were not available under a claim for conversion. However, even if Plaintiffs cannot recover physical/emotional damages under the claims pleaded, they had available to them other claims (e.g., battery) that would provide such recovery. Therefore, a claim for prima facie tort is not available in this case.

### D. CPS' Counterclaim

CPS' counterclaim asserts it was defamed by Plaintiffs' original assertion of a claim for assault and battery. Plaintiffs have not sought dismissal of or judgment on the counterclaim, but the Court desires to streamline matters as much as possible. Therefore, within fifteen days, CPS will show cause why Plaintiffs' (1) pleading was not privileged and (2) why the counterclaim should not be dismissed. <u>See</u>, <u>e.g.</u>, <u>Henry v. Halliburton</u>, 690 S.W.2d 775, 780 & n.8 (Mo. 1985) (en banc); <u>Wunsch v. Sun Life Assur. Co. of Canada</u>, 92 S.W.3d 146, 156 (Mo. Ct. App. 2002); <u>Barge v. Ransom</u>, 30 S.W.3d 889, 890 (Mo. Ct. App. 2000). Plaintiffs shall have fifteen days thereafter to respond.

7

## III. CONCLUSION

CPS is granted summary judgment with respect to Counts II, III, IV and V. CPS is also directed to show cause why its counterclaim should not be dismissed. Summary judgment is denied with respect to Count I.

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, JUDGE
DATE: February 14, 2007                UNITED STATES DISTRICT COURT

8

Case 4:05-cv-00735-ODS   Document 118   Filed 02/14/07   Page 8 of 8